## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**FREDRICK MANSON**                                      **CIVIL ACTION**

**VERSUS**                                              **NO.  05-6302**

**BURL CAIN, WARDEN**                                   **SECTION  "R"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

### I.      Factual Background

The petitioner, Fredrick Manson ("Manson"), is a convicted felon incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On February 25, 1999, Manson and a co-

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

defendant, Albert L. Johnson, were charged in Jefferson Parish with possession with intent distribute cocaine.[3]

The record shows that, on the afternoon of January 13, 1999, narcotics detectives Jenell "Big Girl" Godfrey and William Sandino of the Kenner Police Department conducted a surveillance on a Kart-N-Carry convenience store at 324 Third Street, a known location for drug activity.[4]  The officers wore plain clothes and sat in an unmarked Chevrolet Camaro parked across the two-lane highway in front of the store.

At about 2:00 p.m., the officers saw a green Pontiac Grand Am in a parking lot next to the store.  The defendant, Fredrick Manson, was in the driver's seat and the co-defendant, Albert Johnson, was in the passenger seat.  Over a thirty-minute period, the officers watched four to five individuals approach the car and engage in quick hand-to-hand transactions with the car's occupants, which the detectives believed to be the sale of drugs.

After the final transaction, the car's rear lights went on, indicating the car was running. Detective Sandino drove the police vehicle across the highway and positioned it behind the Grand Am.  Manson's car started to move slowly and the two men began acting in a nervous manner. Johnson turned around several times to look at the officers.  Manson leaned forward as if he was stowing something under his seat.  Concerned that he might be attempting to conceal a weapon or contraband, the officers effected an investigatory stop.

---

[3]St. Rec. Vol. 1 of 6, Bill of Information, 9/25/99.

[4]The facts were taken from the opinion on direct appeal issued by the Louisiana Fifth Circuit Court of Appeal. *State v. Manson*, 791 So.2d 749, 754-55 (La. App. 5th Cir. 2001); St. Rec. Vol. 2 of 6, 5th Cir. Opinion, 01-KA-159, 6/27/01.

When Manson stopped the car, Detective Sandino instructed both men to get out.  At the same time, Sandino walked to the driver's side of the Grand Am.  Sandino saw seven off-white, rock-like objects scattered on the driver's side floorboard.  Sandino seized the rocks and conducted a chemical field test on them.  The result was positive for cocaine.  The detectives placed Manson and Johnson under arrest.

On July 27, 1999, the case was severed.[5]  Manson was thereafter tried before a jury on March 29 and 30, 2000, and found guilty as charged.[6]  Manson's counsel filed a Motion for New Trial which was denied by the Trial Court on April 6, 2000.[7]  That same day, after waiver of legal delays, the Trial Court sentenced him on April 6, 2000, to serve 10 years, five of which was without benefit of parole, probation or suspension of sentence.[8]  The State also filed a multiple bill to which he entered a plea of not guilty.[9]  Manson's counsel also filed a Motion to Reconsider the Sentence which was later withdrawn at the hearing on the multiple bill.[10]

At that hearing, held June 9, 2000, the Trial Court determined Manson to be a multiple offender.[11]  The court later sentenced Manson to the mandatory sentence of life imprisonment

---

[5]St. Rec. Vol. 1 of 6, Minute Entry, 7/27/99.

[6]St. Rec. Vol. 1 of 6, Trial Minutes (2 pages), 3/29/00; Trial Minutes (2 pages), 3/30/00; Jury Verdict, 3/30/00; St. Rec. Vol. 3 of 6, Trial Transcript, 3/29/00; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 3/29/00; St. Rec. Vol. 4 of 6, Trial Transcript, 3/30/00; St. Rec. Vol. 5 of 6, Trial Transcript (continued), 3/30/00.

[7]St. Rec. Vol. 1 of 6, Motion for New Trial, 4/5/06; St. Rec. Vol. 5 of 6, Sentencing Transcript, pp. 5-6, 4/6/00.

[8]St. Rec. Vol. 1 of 6, Revised Sentencing Minutes (nunc pro tunc of 4/6/00), 10/11/00; *see also*, Sentencing Minutes, 4/6/00.

[9]St. Rec. Vol. 1 of 6, Multiple Bill (2 pages), 4/6/00.

[10]St. Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 4/5/00; St. Rec. Vol. 5 of 6, Transcript of Multiple Bill Hearing, pp. 4-5, 6/9/00.

[11]St. Rec. Vol. 1 of 6, Minutes of Multiple Bill Hearing, 6/9/00; St. Rec. Vol. 5 of 6, Transcript of Multiple Bill Hearing, 6/9/00.

without benefit of parole, probation or suspension of sentence as a third offender.[12]  Counsel made an oral motion for appeal which was later submitted in writing and granted.[13]

On appeal to the Louisiana Fifth Circuit Court of Appeal, Manson's counsel raised four grounds for relief: (1) the Trial Court failed to suppress evidence obtained after an illegal search; (2) the Trial Court erred by not allowing evidence that the co-defendant owned the cocaine; (3) the Trial Court should have granted the Motion for New Trial based on insufficient evidence; and (4) the Trial Court received inadequate proof before sentencing him to life imprisonment as a third offender.[14]  The Louisiana Fifth Circuit rejected the arguments and affirmed the convictions and sentences.[15]

Manson's subsequent and timely[16] pro se writ application to the Louisiana Supreme Court was denied without reasons on September 20, 2002.[17]  His convictions became final 90 days later, December 19, 2002, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

---

[12]St. Rec. Vol. 1 of 6, Sentencing Minutes, 6/12/00; St. Rec. Vol. 5 of 6, Sentencing Transcript, 6/12/00.

[13]*Id*.; St. Rec. Vol. 1 of 6, Motion for Appeal, 6/29/00.

[14]*State v. Manson*, 791 So.2d at 749; St. Rec. Vol. 2 of 6, 5th Cir. Opinion, 01-KA-159, 6/27/01; St. Rec. Vol. 5 of 6, Appeal Brief, 01-KA-159, 3/20/01.

[15]*Id*.  The Court also instructed the Trial Court to notify Manson of the limitations period for filing for post conviction relief.  *Id*.  The Trial Court complied on June 28, 2001.  St. Rec. Vol. 1 of 6, Notice, 6/28/01.

[16]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to file a writ application in the Louisiana Supreme Court. His subsequent writ application had a post mark date of July 27, 2001, which was within that period.  *See* St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2001-KO-2269, 8/3/01 (indicating post mark on 7/27/01); *Causey v. Cain*, 450 F.3d 601 (5th Cir. 2006).

[17]*State v. Manson*, 825 So.2d 1156 (La. 2002); St. Rec. Vol. 2 of 6, La. S. Ct. Order, 2001-KO-2269, 9/20/02.

II.     **Procedural Background**

Nine months later, on September 19, 2002, Manson's counsel filed an Application for Post Conviction Relief in the Trial Court raising three grounds for relief:[18] (1) Manson was denied effective assistance of counsel where counsel was forced to go to trial only one week after being retained; (2) Manson was denied effective assistance of counsel where counsel failed to have the co-defendant present to testify at trial; and (3) Detective Jenell "Big Girl" Godfrey's subsequent misconduct casts doubt on the truthfulness of her statements at trial.

On September 25, 2003, the Trial Court denied the two ineffective assistance of counsel claims as meritless under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and related state law.[19]  The Court also resolved that the third claim, regarding Godfrey's credibility should have been raised on direct appeal.  The Court therefore ordered Manson to state reasons for the failure to do so.

Manson's counsel filed a writ application with the Louisiana Fifth Circuit seeking review of the Trial Court's ruling.[20]  The Louisiana Fifth Circuit did not consider Manson's Writ Application awaiting a complete ruling by the Trial Court on all three of the claims raised.[21]

In the meantime, Manson's counsel also filed a Response to the Court's Request on October 16, 2003 alleging that the argument was not ripe for presentation because Godfrey had not entered

---

[18]St. Rec. Vol. 2 of 6, Application for Post Conviction Relief, 9/19/03.

[19]St. Rec. Vol. 2 of 6, Trial Court Order (2 pages), 9/25/03.

[20]St. Rec. Vol. 2 of 6, Notice of Intent to Seek Supervisory Writs, 10/16/03; Motion for Extension of Return Date, 10/22/03; 5th Cir. Writ Application, 03-KH-1313, 11/7/03.

[21]St. Rec. Vol. 1 of 6, 5th Cir. Order, 03-KH-1313, 12/10/03.

pleas of guilty to the malfeasance in office charges forming the basis of Manson's claim.[22]  Counsel also argued that the Godfrey's criminal proceedings were mentioned by counsel on appeal and, though not presented as assignment of error, the Louisiana Fifth Circuit did not address the point.

Over one-year later, Manson's counsel filed a Motion to Set Status Hearing in which counsel urged the Trial Court to rule on the remaining post-conviction claim.[23]  The Trial Court granted the motion on November 30, 2004.[24]  The Trial Court held the hearing on January 20, 2005.[25]  The Court thereafter denied the Application for Post Conviction Relief reiterating its ruling denying the ineffective assistance of counsel claims and finding that the third claim regarding Godfrey's credibility was in procedural default for failure to raise it on appeal citing *State v. Gaines*, 701 So.2d 688 (La. App. 4th Cir. 1997).[26]

Manson's counsel filed a writ application with the Louisiana Fifth Circuit seeking review of the Trial Court's rulings on four grounds:[27] (1) the Trial Court erred by not having an evidentiary hearing on the ineffective assistance of counsel claims; (2) trial counsel was ineffective for failure to have the co-defendant present at trial; (3) Godfrey's misconduct cast doubt on the truthfulness of her statements; and (4) the Trial Court erred in imposing a procedural default on the third claim.

---

[22]St. Rec. Vol. 2 of 6, Response to Court's Request, 10/16/03.

[23]St. Rec. Vol. 2 of 6, Motion to Set Status Hearing, 11/15/04.

[24]*Id.*

[25]St. Rec. Vol. 2 of 6, Minute Entry, 1/20/05.

[26]In *Gaines*, the court held that a defendant is procedurally barred from raising a claim on post conviction relief if he could have done so on appeal or in prior applications.  *Gaines*, 701 So.2d at 693-94; *see also*, La. Code Crim. P. arts. 930.4(C), which provides for dismissal of a post conviction application if it raises a claim which should have been raised on appeal.

[27]St. Rec. Vol. 1 of 6, Notice of Intent to Seek Supervisory Writs, 3/8/05; Motion for Extension of Return Date, 3/8/05; St. Rec. Vol. 6 of 6, 5th Cir. Writ Application, 05-KH-370, 4/8/05.

The Louisiana Fifth Circuit denied the Writ Application finding insufficient basis to disturb the Trial Court's ruling.[28] The Court also noted that, even if the evidence related to the third claim was unavailable at the time of the appeal, the claim was without merit.

Manson's counsel sought additional, timely review of the first three claims in the Louisiana Supreme Court on June 16, 2005.[29] The Court denied the application without reasons on April 22, 2005.[30]

## III.   **Federal Petition**

On November 28, 2005, Manson filed a petition for federal habeas corpus relief in which he alleges seven grounds for relief:[31] (1) the conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure; (2) the Trial Court erred by denying petitioner the right to present exculpatory evidence through the co-defendant's out of court statements; (3) the Trial Court erred in denying petitioner a new trial; (4) the Trial Court erred in accepting inadequate proof to adjudicate petitioner as a third offender and in failing to inform petition of his right to remain silent; (5) ineffective assistance of counsel where counsel was unprepared for trial and failed to have the co-defendant available for trial; (6) the prosecution, through Detective Godfrey, withheld exculpatory information regarding the co-defendant's statements during arrest; and (7) the Trial Court erred in imposing a procedural bar on the claim regarding Detective Godfrey.

---

[28]St. Rec. Vol. 1 of 6, 5th Cir. Order, 05-KH-369, 5/27/05.

[29]St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2005-KH-1597, 6/16/06; La. S. Ct. Writ Application, 05-KP-1597, 6/16/05.

[30]*State v. Manson*, 922 So.2d 547 (La. 2006).

[31]Rec. Doc. No. 1.

The State filed an opposition response arguing that Manson failed to exhaust state court remedies as to all of the claims raised and the petition should be dismissed for that reason.[32] Alternatively, the State argues that Manson has exhausted state court remedies as to claim nos. 1, 2, 3 and 4, and that these claims are without merit.

## IV.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[33] applies to Manson's petition, which is deemed filed in this court under the federal "mailbox rule" on September 12, 2005.[34]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  In this case, the State has raised Manson's failure to exhaust as a defense.

---

[32]Rec. Doc. No. 11.

[33]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Manson's federal habeas petition on November 28, 2005, when the filing fee was paid.  Manson dated his signature on the petition on September 12, 2005.  This is the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid the filing fee does not alter the application of the mailbox rule to his pro se petition.  *Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

## V.    Exhaustion Requirement

The State argues that Manson has not exhausted available state court remedies as to all of the claims raised in this petition.  "A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419.  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims."  *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court.  *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."  *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application."  *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).  For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin*, 541 U.S. at 32.  A prisoner does not

fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*

In the instant case, the State argues that the Louisiana Supreme Court had not ruled on Manson's 2005 Writ Application leaving the claims raised therein unexhausted. The State also suggested that Manson's claims challenging the ineffective assistance of counsel, Detective Godfrey's credibility, and the imposition of the procedural bar were raised in the last Writ Application and would be exhausted when the Louisiana Supreme Court ruled. As outlined above, the Louisiana Supreme Court ruled on that Writ Application before the State filed its opposition.

The record, however, reflects several errors in the State's exhaustion analysis. Had counsel for the State reviewed the 2005 Writ Application to the Louisiana Supreme Court, she would have discovered that Manson's counsel did <u>not</u> raise the seventh claim, challenging the imposition of the procedural bar to the claim regarding Detective Godfrey's testimony.[35] In fact, Manson's counsel specifically indicated therein that he was <u>not</u> raising that claim to the Louisiana Supreme Court on the misguided assumption that the claim had been denied on the merits by the Louisiana Fifth Circuit.[36]

Thus, a simple review of the record reflects that Manson has <u>not</u> exhausted the challenge to the state trial court's imposition of the procedural bar. When the Louisiana Supreme Court issued its ruling on the 2005 Writ Application, there was no exhaustion of that issue because the issue was not raised to that court.

---

[35]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 05-KP-1597, 6/16/05.

[36]*Id.*, p. 11.

Nevertheless, Manson's counsel did in fact raise the Godfrey issue itself to the Louisiana Supreme Court. The Louisiana Supreme Court issued its decision without reasons. It is therefore presumed under federal law that the decision followed the last reasoned decision by a lower court. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). The last reasoned decision addressing the merits of the Godfrey claim was that of the Louisiana Fifth Circuit which found no error in the trial court's imposition of the procedural bar to that claim. The Trial Court found the claim to be procedurally barred because it could have been raised on direct appeal. La. Code Crim. P. art. 930.4(C); *Gaines*, 701 So.2d at 693-94.

The reasoning of the state courts therefore came full circle. Though Manson's challenge to the imposition of the bar was not specifically raised to the Louisiana Supreme Court, that Court is presumed under *Ylst* to have considered the propriety of the bar imposed by the Trial Court and approved by the Louisiana Fifth Circuit. The adequacy of that bar is therefore before this Court in a round-about way. Further exhaustion in the state courts would appear futile for this reason.

In addition, the claim that a state court erred in applying a state procedural rule does not raise a federal constitutional issue. A federal habeas court does not sit to correct alleged errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999). Instead, this Court will determine *infra* whether the procedural bar was adequate to bar federal review of the Godfrey claim which is a federal issue. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993). To that end, it would be repetitive and futile to require Manson to return to the Louisiana Supreme

Court to exhaust the claim challenging the application of the procedural bar to his Godfrey claim. *See* 28 U.S.C. § 2254(b)(2) (an application may be denied on the merits notwithstanding the failure to exhaust).

For the foregoing reasons, the Court must reject the State's exhaustion defense as to Manson's fifth and sixth claims.  The record is now adequate to address these issues in light of the Louisiana Supreme Court's 2005 ruling on Manson's last Writ Application.  However, the Court finds that Manson has failed to exhaust his challenge to the imposition of the procedural bar to his Godfrey claim.  Nevertheless, to require further exhaustion of that claim would be repetitive and futile.  The Court will therefore proceed to further address Manson's claims.

**VI.**    **Procedural Default**

As outlined above, the Trial Court determined that Manson's claim challenging Detective Jenell "Big Girl" Godfrey's credibility was procedurally barred from review because it was not raised on direct appeal.  The Louisiana Fifth Circuit found no reason to disturb that ruling and alternatively determined the claim to have no merit.  The Louisiana Supreme Court denied the subsequent Writ Application without reasons.

In this case, the last stated reason for denying relief on the Godfrey claim was that of the Trial Court which imposed the procedural bar.  *Ylst*.  Although the Louisiana Fifth Circuit briefly addressed the merits of the claim, "'[t]he rule in this circuit is that, when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny habeas relief because of the procedural default.'"  *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005) (*quoting Cook v. Lynaugh*, 821 F.2d 1072, 1077 (5th Cir.1987)).  Therefore, the fact that the Louisiana Fifth Circuit

alternatively commented on the merits of that claim is of no moment and the Court must examine the procedural bar.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

In this case, the state courts barred review of Manson's Godfrey claim because it was not raised on direct appeal as required by Louisiana law. Specifically, La. Code Crim. P. art. 930.4(C) provides for the dismissal of a post conviction application which raises a claim which could have been and was not raised on direct appeal. This Court must consider whether the bar prohibits consideration of the claim on federal habeas corpus review. For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.

### A.    <u>Independent State Ground</u>

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338.   In this case, the Trial Court relied exclusively on a rule of Louisiana procedural default, independent of federal law, in reaching its decision to dismiss petitioner's claims. The ruling was therefore based on an independent state ground. *See e.g.*, *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (Art. 930.4); *Washington v. Cain*, 2000 WL 863980 (E.D. La. June 27, 2000) (Art. 930.4).

### B.    <u>Adequate State Ground</u>

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).   To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.   *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339).   A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief.   *Id.*   This federal habeas court must therefore evaluate the adequacy of each of the rules applied to bar petitioner's claims.

A federal habeas court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).   In keeping with this rule, a state procedural rule that is applied arbitrarily or in an

unexpected manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98

F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002).  For

this reason, when state courts apply a procedural bar that has no foundation in the record or basis

in state law, the federal courts need not honor that bar.  *Davis v. Johnson*, 2001 WL 611164 at *4

n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, 1999 WL 562728 at *4 (E.D. La. July

28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under

the circumstances of the case); *Poree v. Cain*, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz,

J.) (Art. 930.8 was not adequate to bar review because it was misapplied).  However, where such

a basis exists in state law, the bar must stand.

As noted above, the basis for dismissal of these claims was the state procedural ground found

in La. Code Crim. P. arts. 930.4(C) and *State v. Gaines*, which provided for dismissal of a post

conviction application if it raises a claim which should have been raised on appeal.  According to

the record and the reasons of the Trial Court, Manson's counsel did not raise this claims on direct

appeal.  The state court also resolved that the information was available at the time of the appeal.

The holding in *State v. Gaines* and La. Code Crim. P. art. 930.4(C) were therefore adequate to

support the state courts' bar to post-conviction review of these claims.

Manson will be excused from this procedural bar to review if he can show cause for his

failure to raise the claims properly and prejudice from the failure to review the claims.

### C.   <u>**Cause and Prejudice**</u>

To establish a cause for his procedural default, Manson must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Even under a broad reading, he has not demonstrated in his pleadings the existence of any objective factor <u>external</u> to the defense that impeded his ability to raise these claims in a procedurally proper manner.

Furthermore, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." *Murray*, 477 U.S. at 486; *see also*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (a petitioner must first prove that counsel's actions were constitutionally deficient before such a claim can stand as cause for a procedural default).  Manson's counsel attempted to show the state courts on post conviction that the appellate counsel did not have all of the information necessary to fully argue the claim on direct appeal.  By imposing the bar, the Trial Court determined that Manson's counsel could have raised the claim on appeal and the Louisiana Fifth Circuit acquiesced in that finding.  Manson has not briefed this issue or specifically raised this as cause before this Court to excuse his procedural default.

Nevertheless, the Court has reviewed his allegations raised to the State and finds no basis for cause to excuse the bar.  The Court also notes that if Manson intends to rely on the alleged ineffective assistance of appellate counsel as cause, he must first independently exhaust the claim, which he has not done.  *Edwards*, 529 U.S. at 451.  Manson, therefore, has not shown cause for the failure to properly raise these claims in state court.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982)). Thus, having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and Manson has not alleged any actual prejudice. *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)). Manson's claims challenging Detective Godfrey's credibility is therefore procedurally barred from review by this court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[37]

### D.   Fundamental Miscarriage of Justice

Manson's only remaining means of escaping this bar is if he can establish that a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish this, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by

---

[37]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. *Id.* In the instant case, the State has affirmatively raised the procedural default defense.

clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Manson has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence of the crimes charged. *Murray*, 477 U.S. at 496. When the petitioner has not factually established his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because Manson has not met any exception to the procedural bar, his procedurally defaulted claim must be dismissed with prejudice without review of the merits. The affirmation of the procedural bar therefore resolves review of Manson's sixth and seventh federal claims. The Court will proceed to the merits of Manson's remaining five federal habeas corpus claims.

## VII.   <u>Standards of Review on the Merits</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law. A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Title 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. Title 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *cf*. *Wright v. West*, 505 U.S. 277, 304 (1992).  The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000).  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is

19

whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

## VIII.   <u>Unconstitutional Search and Seizure (Claim No. 1)</u>

Manson alleges that the investigating officers had no probable cause to stop him to conduct a search and the evidence produced from that search was illegal. The State argues in its opposition that Manson was not entitled to federal court review of this claim.

Manson's counsel raised this issue in a Motion to Suppress alleging that the search and seizure did not result from a lawful arrest and the evidence was seized as the result of an unlawful search.[38] The Trial Court conducted a hearing on this motion which was held over the course of several days, November 2, 1999, January 10, 2000,[39] and February 23, 2000.[40] At these hearings, counsel questioned the Officers Godfrey, Sandino and Synigal, who appeared on the scene after the stop, all of whom testified regarding the details of the events surrounding the stop and arrest of Manson and Johnson.[41]

The Court denied the motion finding that there was probable cause to stop Manson and Johnson based on the drug activity witnessed by the officers and in light of the high crime area and

---

[38]St. Rec. Vol. 1 of 6, Motion to Suppress, 8/3/99.

[39]On this date, Manson's counsel subpoenaed the wrong officer and no relevant testimony was taken. St. Rec. Vol. 3 of 6, Transcript of Motion Hearing, 1/10/00.

[40]St. Rec. Vol. 1 of 6, Minutes of Motion Hearing, 11/2/99; Minutes of Motion Hearing, 1/10/00; Minutes of Motion Hearing, 2/23/00.

[41]St. Rec. Vol. 3 of 6, Transcript of Motion Hearing, 11/2/99; Transcript of Motion Hearing, 2/23/00.

the officers' narcotics experience.[42]  In addition, the Court referenced the fact that Officer Sandino saw seven rocks of crack cocaine in plain view scattered on the floor of the driver's side of the vehicle, where Manson was sitting.  These rocks also field tested positive as cocaine which gave them probable cause for the arrest and seizure.

Manson's counsel filed a request for stay of the trial to allow him time to seek review of the denial of the Motion to Suppress.[43]  Both the Trial Court and the Louisiana Fifth Circuit denied the request to stay the trial.[44]  The appellate court also noted that there would be an adequate remedy on appeal.[45]

These arguments were raised again by Manson's appointed appellate counsel.  Citing *Terry v. Ohio*, 392 U.S. 1 (1968) and related state cases, the Louisiana Fifth Circuit resolved that the officers made a valid investigatory stop based on reasonable suspicion of criminal activity.[46]  The Court further held that Officer Sandino was lawfully questioning Manson pursuant to the *Terry* stop when, from his position, he saw in plain view the suspicious rocks on the floorboard.[47]  The Court resolved that, from that point, the "reasonable suspicion" advance to "probable cause" and the seizure was properly made pursuant to the plain view exception to the warrant requirement.[48]  The Louisiana Fifth Circuit found the claim to be without merit.  The Louisiana Supreme Court denied

---

[42]St. Rec. Vol. 3 of 6, Transcript of Motion Hearing, p. 37, 2/23/00.

[43]St. Rec. Vol. 1 of 6, Notice of Intent, 3/27/00; 5th Cir. Motion, 00-KM-868, 3/29/00; Notice of Intent to Seek Stay of Proceedings, 3/29/00.

[44]St. Rec. Vol. 1 of 6, 5th Cir. Order, 00-KM-861, 3/27/00; Trial Court Order, 3/29/00; 5th Cir. Order, 3/29/00.

[45]St. Rec. Vol. 1 of 6, 5th Cir. Order, 3/29/00.

[46]*State v. Manson*, 791 So.2d 756-57; St. Rec. Vol. 2 of 6, 5th Cir. Opinion, 01-KA-159, p. 8, 6/27/01.

[47]*State v. Manson*, 791 So.2d at 757; St. Rec. Vol. 2 of 6, 5th Cir. Opinion, 01-KA-159, p. 9, 6/27/01.

[48]*Id.*

the subsequent Writ Application without reasons thereby acquiescing to the appellate court's reasoned decision. *Ylst*, 501 U.S. at 802.

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.*, 428 U.S. at 494. A "full and fair hearing means that 'where there are <u>facts</u> in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court.'" (emphasis in original) *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)). Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987).

Thus, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," petitioner's claim cannot succeed. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *Christian v. McKaskle*, 731 F.2d 1196, 1199 (5th Cir. 1984). The bar of *Stone v. Powell* applies despite any state trial court error in deciding the merits of petitioner's Fourth Amendment claim. *Andrews v. Collins*, 21 F.3d 612, 631-32 (5th Cir. 1994); *Christian*, 731 F.2d at 1199 n.1; *Swicegood v. Alabama*, 577 F.2d 1322, 1324-25 (5th Cir. 1978).

Manson does not argue or contend that he was denied a full and fair hearing on the Motion to Suppress. The record shows that Manson presented his Motion to Suppress to the Trial Court, which conducted three evidentiary hearings. He then presented the claims to the Louisiana Fifth Circuit, which considered the claim in a full published opinion. The claim was then brought to the Louisiana Supreme Court, which granted no relief. After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews*, 21 F.3d at 631.

The State has provided Manson, who was assisted by counsel, with the opportunity to litigate his Fourth Amendment claims fully and fairly. The fact that he may disagree with the state courts' decision to deny relief is not sufficient to overcome the *Stone v. Powell* bar to federal review. *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002).

Accordingly, *Stone v. Powell* bars review of this claim. *Id.*; *Williams v. Collins*, 16 F.3d 626, 637-38 (5th Cir. 1994). Manson's claim must be dismissed.

## IX.   Denied Right to Present Exculpatory Evidence (Claim No. 2)

Manson alleges that he should have been allowed to present his co-defendant's statements to the jury at trial. He claims that Johnson told the police at the time of his arrest that Manson knew nothing about the drugs and had only given him a ride to the store. Manson further contends that his wife was present when Johnson made these statements to the police. Manson also claims that Johnson, while out on bond, went to the district attorney's office to advise them that the drugs were his and that Manson knew nothing about the drugs. Manson argues that these statements were not

hearsay and should have been admissible at trial.  He claims that the Trial Court's refusal to allow admission of this evidence rendered his trial fundamentally unfair.

In its conclusory response to this issue, the State merely quotes the opinion of the Louisiana Fifth Circuit.  The State then concludes, without any analysis or recitation of federal law, that the opinion was not contrary or an unreasonable application of federal law.

Manson's counsel first suggested that Johnson had taken credit for the ownership of the seized drugs in the hearing on the Motion to Suppress.  During the hearings on that motion, counsel attempted to prove that the officers had no cause to stop or arrest Manson because the the drugs were not his and he was not engaged in drug activity.  To show this, Manson's wife testified that she heard Johnson tell the arresting officers at the scene that he was responsible for the drug activity. Based on this, counsel argued that the officers had no reason to arrest Manson since Johnson had taken credit for the drug activity.  Detectives Godfrey and Sandino denied that Johnson made any such statement and also testified regarding the activity they witnessed.  As discussed above, the motion was denied in part on the basis that probable cause existed for the stop and arrest, apparently giving no credibility to Mrs. Manson's statements.

Counsel tried again at trial to obtain permission to solicit testimony from Manson's wife and brother that would show that Johnson told the sheriff's deputies and the prosecution that he owned the drugs and that Manson was innocent.  The Trial Court entertained a motion to allow the testimony at trial as an exception to the hearsay rule.[49]  The Court allowed counsel to proffer a

---

[49]St. Rec. Vol. 4 of 6, Trial Transcript, pp. 8-9, 3/30/00.

summary of the statement and instructed counsel to provide additional information before the testimony would be allowed.[50]

The Court allowed counsel to call the assistant district attorney who the Mansons claimed to have heard Johnson make the statements.  Kia Habisreitinger was sworn and testified that she had no recollection of speaking with Johnson.[51]  She further stated that, had Johnson approached her, she would have disallowed any conversation about the case and referred him to his attorney.[52]  The Trial Court resolved that there was no corroboration as to the trustworthiness of the statement attributed to Johnson and denied counsel's request to allow the Mansons to testify regarding Johnson's alleged statements to the police or the assistant district attorney.[53]

On direct appeal, Manson's counsel argued that the Trial Court erred by not allowing the testimony, as an exception to the hearsay rule, showing that Johnson was the owner of the cocaine and thereby denied him the right to present a defense.  Relying on the Louisiana Code of Evidence and related law, the Louisiana Fifth Circuit held that counsel had offered nothing to show that Johnson was unavailable to testify.  The Court also determined that counsel had failed to corroborate the trustworthiness of the statement, the making of which was denied by the officers and the assistant district attorney during the motions to suppress and the pretrial motion on the hearsay exception.  This was the last reasoned decision on the issue because the Louisiana Supreme Court denied the subsequent writ application without reasons.  *Ylst*.

---

[50]*Id.*

[51]St. Rec. Vol. 5 of 6, Trial Transcript (continued), p. 16, 3/30/00.

[52]*Id.*

[53]*Id.*, p. 23.

A habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992). The states are free to implement procedures regarding the admission of evidence, provided that those procedures do not infringe on a constitutional guarantee. *Burgett v. State of Texas*, 389 U.S. 109 (1967). Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.) That is, state law errors, including evidentiary rulings, only rise to constitutional dimension if they so infuse the trial with unfairness that they more likely than not caused a suspect verdict. *See United States v. Derden*, 978 F.2d 1453, 1458 (5th Cir. 1992).

In this case, Manson has not established that his trial was unconstitutionally unfair. Manson has not established a basis for the state courts to have allowed into evidence the uncorroborated, untrustworthy statements attributed to Johnson by his relatives. Furthermore, he has not shown that the verdict reached was suspect.

To that end, Manson does not here challenge the verdict in any particular way. He does not challenge the sufficiency of the evidence in support of the verdict or that the verdict would have been different if the alleged statements were entered.

The fact that Johnson may have admitted outside of court that the cocaine was his would not necessarily have altered the jury's finding that Manson also knowingly possessed the cocaine found

in his car with intent to distribute it.  Manson has not here shown an unfairness at trial resulting from this evidentiary ruling which rendered the verdict suspect.

Manson has failed to demonstrate a constitutional violation arising from the state courts' evidentiary ruling on the inadmissability of the hearsay evidence.  Thus, the denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Manson is not entitled to relief on this claim.

## X.   Denial of the Motion for New Trial (Claim No. 3)

Manson alleges that he was entitled to a new trial on the basis that he was unable to present the testimony of the co-defendant Johnson and allowed the State to prove the case solely with circumstantial evidence offered by the arresting officers.  He also urges that his other assignments of error, regarding the search and seizure, the denial of the ability to present Johnson's statement, and the insufficient evidence at the multiple bill hearing, also demonstrate why he was entitled to a new trial.

Manson's counsel filed a motion for new trial with the Trial Court based on the sufficiency of evidence at trial.[54]  The Trial Court denied the motion based on the evidence proven at trial.[55]

Counsel raised the claim again on direct appeal.  The Louisiana Fifth Circuit commented that it did not appear that the motion was timely filed.  The Court ruled that the sufficiency of the evidence, nevertheless, could be addressed on appeal even where the issue is not properly preserved for appeal.  The Court reviewed the facts proven at trial and resolved that there was sufficient evidence to prove that Manson was at least in constructive possession of the cocaine.  Viewing that

---

[54]St. Rec. Vol. 1 of 6, Motion for New Trial, 4/5/00; St. Rec. Vol. 5 of 6, Sentencing Transcript, p. 5, 4/6/00.

[55]*Id.*

evidence in the light most favorable to the prosecution, the court resolved that the evidence was sufficient to support the guilty verdict.  The Louisiana Supreme Court denied without reasons the subsequent writ application.

In the instant claim, Manson suggests that the motion for new trial should have been granted because the evidence was not sufficient to support the verdict because the jury was not aware of Johnson's alleged out of court admissions of guilt.  The proper query for sufficiency of the evidence is not the consideration of what was not presented to the jury.  Instead, a claim of insufficiency of the evidence is reviewed by a federal habeas court under the due process standard announced by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1969).  *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).

Under this standard, a criminal defendant may not be convicted absent a finding of guilt beyond a reasonable doubt by the trier of fact and, it follows, where no rational trier of fact could find guilt beyond a reasonable doubt, a conviction under such circumstances cannot stand.  *Jackson*, 443 U.S. at 316-17.  However, the trial court's findings on an issue of fact will be upset only where necessary to preserve the "fundamental protection of due process of law." *Jackson*, 443 U.S. at 319. Where the prosecution has failed to prove beyond a reasonable doubt any element of a crime, a resulting conviction is "not consistent with the demands of the Federal Due Process Clause." *Fiore v. White*, 531 U.S. 225, 229 (2001) (*per curium*).  Thus, in reviewing a claim of insufficient evidence, this Court must determine whether, looking to the elements of the offense as defined by state substantive law, and viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000).

Manson was charged with and convicted of violation of La. Rev. Stat. Ann. § 40:967(A), possession of with the intent to distribute cocaine. To support a conviction for possession of a controlled dangerous substance, such as cocaine, with the intent to distribute, the State was required to prove that Manson knowingly and intentionally possessed the cocaine and that he did so with the specific intent to distribute it. *State v. Smith*, 649 So.2d at 1081.

The elements of knowledge and intent are states of mind that need not be proven as facts, but may be inferred from the circumstances. *State v. Reyes*, 726 So.2d 84, 88 (La. App. 5th Cir. 1998); *State v. Davies*, 350 So.2d 586, 588 (La. 1977). While specific intent to distribute is a necessary element to convict, Louisiana courts have held that such intent may be established by proving factual circumstances surrounding the possession giving rise to a reasonable inference of intent to distribute; such circumstances include: "previous distribution by the defendant; presence of paraphernalia for distribution; possession of an amount sufficient to create a presumption of intent to distribute; and packaging in a form usually associated with distribution rather than personal use." *State v. Jones*, 731 So. 2d 389, 393 (La. App. 4th Cir.), *writ denied*, 751 So.2d 234 (La. 1999).

The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. *State v. Williams*, 802 So.2d at 914. Under Louisiana law, a person not in physical possession of a drug may have constructive possession when the drug is under that person's dominion or control. *State v. Reyes*, 726 So.2d at 88. Factors considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession may include: 1) the defendant's knowledge that illegal drugs were in the area; 2) his relations with the person found to be in actual possession; 3) the defendant's access to the area where the drugs were found; 4) evidence of recent drug use by the defendant; 5) the

existence of paraphernalia; and, 6) evidence that the area was frequented by drug users. *State v. Williams*, 735 So.2d 62, 69 (La. App. 5th Cir. 1999) (citing *State v. Appacrombie*, 616 So.2d 285, 288 (La. App. 2d Cir. 1993).

In this case, the record shows that Detectives Godfrey and Sandino watched the car in which Manson and Johnson sat and which was parked at a known location for drug activity.  Neither Manson nor Johnson left the car or entered the convenience store.  The deputies also witnessed several hand-to-hand transactions with Manson or Johnson.  The deputies saw money exchanged although the drugs, described as small rocks, were not visible.  When the deputies attempted to stop the car, Godfrey saw Manson lean towards the floor of the car.  Upon a search of the vehicle, the officers found rocks of cocaine sprinkled on the floor in front of Manson's driver's seat and $300 in his pocket.

Based on this, the Louisiana courts resolved that the evidence was sufficient to establish Manson's constructive possession and his intent to distribute the cocaine.  Considering this evidence in the light most favorable to the prosecution, a rational jury could have found the essential elements of the crime to have been proven beyond a reasonable doubt.  The denial of relief on this claim was therefore not contrary to, or an unreasonable application of, Supreme Court precedent, specifically *Jackson*.  Manson is not entitled to relief on this claim.

## XI.   Insufficient Evidence at the Multiple Bill Hearing (Claim No. 4)

Manson alleges that the Trial Court erred in finding him to be a habitual offender because none of the exhibits contained documentation of the mandatory sentencing ranges for those crimes or the possibility of enhanced penalties due to a multiple bill based on those convictions and because the State failed to prove an intelligent waiver of rights in connection with those prior convictions.

In response, the State alleges that Manson is not entitled to review of the prior convictions and that the last reasoned decision of the state courts found the proof to be sufficient to support the multiple offender adjudication.

Manson challenged the sufficiency of the evidence at the multiple offender adjudication in his direct appeal. The Louisiana Fifth Circuit determined that the evidence produced at the habitual offender hearing established him to be the same person as was previously convicted.[56] The court resolved that the evidence was sufficient to establish that Manson was a multiple offender. The Louisiana Supreme Court accepted this decision through the denial without reasons of Manson's subsequent writ application. *Ylst*.

Claims of insufficient evidence present a mixed question of law and fact. *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). As discussed above, the Court must therefore determine whether the denial of relief was contrary to the Supreme Court's opinion in *Jackson v. Virginia*, which requires the Court to determine whether, after viewing the entire record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of a charge to have been proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

To establish that a defendant is a habitual felony offender under La. Rev. Stat. Ann. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. *State v. Shelton*, 621 So.2d 769 (La.1993); *State v. Staggers*, 2003 WL 22438958 at *5-6 (La. App. 5th Cir. 2003) (*citing State v. Davis*, 829 So.2d 554 (La. App. 5th Cir. 2002)); *State v. Warfield*, 2003 WL 22439586 at *2-3 (La. App. 2d Cir. 2003). Certified copies of court records evidencing prior convictions are sufficient to

---

[56]St. Rec. Vol. 2 of 8, 5th Cir. Opinion, 01-KA-188, p. 9-12, 8/28/01.

prove the prior conviction. *Staggers*, 2003 WL 22438958 at *6. However, independent proof, such as matching fingerprints and other vital information, is required to show that the defendant is the same person identified in those records. *State v. Walker*, 795 So.2d 459, 463 (La. App. 5th Cir. 2001), *writ denied*, 826 So.2d 1115 (La. 2002).

The Louisiana Supreme Court has also held that, upon presentation of sufficient proof of identity and prior convictions, the burden shifts to the defendant to challenge the validity of the underlying convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three <u>Boykin</u> rights.

*Shelton*, 621 So.2d at 779 (footnotes omitted).

In the instant case, the State introduced the testimony of Captain Merril Boling, an expert in examination and identification of fingerprints, with the Jefferson Parish Sheriff's Office.[57] Captain Boling testified that the fingerprints on the arrest registers from the prior cases matched the prints taken from Manson in court on the day of the hearing.[58] In connection with his testimony, the State also introduced certified copies of the records in Jefferson Parish Case Nos. 89-750 and 91-

---

[57]St. Rec. Vol. 5 of 6, Transcript of Multiple Bill Hearing, pp. 7-8, 6/9/00.

[58]*Id.*, pp. 9-15.

32

910, which included the arrest registers, the fingerprint cards, the bills of information, and the waiver of constitutional rights form.[59]  Manson also testified that his signature appeared on the waiver of rights forms presented by the State and that he entered pleas of guilty in both cases.[60]  The Trial Court determined that the waiver forms used in connection with the prior pleas of guilty complied with the law at the time and the pleas were intelligent, knowing and voluntary.[61]  The Court further held that the State had met its burden of proof of identification and of the prior conviction.[62]

The Court finds that the testimony and evidence at the multiple bill hearing was sufficient to support the state court's finding that Manson was one and the same person who had been convicted in the prior cases.  The documentary evidence also established that Manson pleaded guilty with counsel in the prior felony convictions.

Manson did not establish at the state court hearing or on appeal, nor has he demonstrated here, any procedural irregularity in the prior case which would have required further proof from the State under Louisiana law.  The evidence was therefore sufficient for the state trial court to find that the prior conviction was appropriate as a basis to enhance Manson's sentence under the habitual offender laws.

Furthermore, this Court on federal habeas review is unable to consider any alleged violations that may have occurred in the prior cases addressed in Manson's multiple bill.  The United States Supreme Court has held that federal habeas corpus relief is not available when a petitioner

---

[59]*Id.*, pp. 9-21.

[60]*Id.*, pp. 23, 25-26.

[61]*Id.*, pp. 37-38.

[62]*Id.*, pp. 38-39.

challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody. *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 400-401 (2001). Therefore, Manson cannot challenge his current sentence in this court by claiming that his prior conviction was not constitutionally sound.

For the foregoing reasons, the state courts' denial of relief on Manson's claim of insufficient evidence at the multiple bill hearing was not contrary to or an unreasonable application of Supreme Court precedent. Manson is not entitled to relief on this claim.

## XII.   Ineffective Assistance of Counsel (Claim No. 5)

Manson seeks review of alleged deficiencies in his trial counsel's performance. Manson did not brief this issue in his petition or the memorandum in support. He alleges that his trial counsel was "unprepared before and during trial" and that his "previous counsel was ineffective for failing to have co-defendant, Albert Johnson, available for trial."[63] He also suggests that the state court erred by not holding an evidentiary hearing to determine "whether trial counsel was rendered ineffective for being forced to trial without having any knowledge of petitioner's case."[64]

Manson's counsel raised this claim in the application for post conviction relief. In its order issued September 25, 2003, the Trial Court denied relief on these grounds finding that the claim was without merit under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Trial Court held that Manson failed to identify errors or mistakes made by counsel at trial. With regard to Johnson's absence from trial, the Trial Court held that counsel's decisions regarding

---

[63]Rec. Doc. No. 1, p. 6.

[64]*Id.*

location and investigation of Johnson as a witness fell within counsel's discretion regarding matters of strategy.  The Trial Court held that the allegations did not go beyond strategic choices or trial tactics made by counsel.

The Louisiana Fifth Circuit and the Louisiana Supreme Court acquiesced in this finding without providing further reasons.  Therefore, the Trial Court provided the last reasoned decision on this issue.  *Ylst*, 501 U.S. at 802.

### A.   The *Strickland* Standard

The standard for evaluating counsel's performance is set forth in *Strickland*, in which the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  To meet the burden of proving ineffective assistance of counsel, Manson "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).   Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689.  "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  *Lockhart*

*v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  *Motley*, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

A claim of ineffective assistance of counsel is a mixed question of law and fact.  *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must determine whether the state court's failure to grant relief to Wall was contrary to or an unreasonable application of *Strickland*.

**B.    Unprepared for Trial**

Manson alleges that his trial counsel was unprepared for trial.  Manson's argument in his federal petition is generalized and non-specific, just as it was in the state application for post conviction relief.  At best, he appears to complain that counsel was ineffective because he was denied a continuance of trial and had only recently been retained.

Manson fails to make any specific demonstration of deficient performance by counsel or prejudice as a result thereof.  Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983)).  In the absence of a specific showing that specific errors and omissions were constitutionally deficient, and how they prejudiced petitioner's right to a fair trial, claims of ineffective assistance of counsel are without merit.  *Miller*,

200 F.3d at 282 (*quoting Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir.1992)); *Wilson v. Cockrell*, 70 Fed. Appx. 219, 228 (5th Cir. 2003).

Furthermore, the record and transcript reflect that Manson was represented at trial by both his long-term counsel and his newly retained counsel.[65]   Manson's trial counsel effectively challenged the State's case through cross-examination of the witnesses and his argument to the jury. This is ultimately what is required by the United States Constitution to avoid prejudice to the defendant in a criminal trial.  *See United States v. Cronic*, 466 U.S. 648, 658-59 (1984).

For these reasons, the denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Manson is not entitled to relief on this claim.

## C.      Failed to Secure Co-defendant's Presence at Trial

In his next argument, Manson complains that his prior counsel did not secure Johnson's presence at trial.  As a rule, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  The failure to call Johnson would not alone be enough to establish deficient performance.

Furthermore, in this case, the record shows that Johnson was a fugitive and failed to appear for the trial on March 29, 2000.[66]  His whereabouts were unknown by the State, his counsel and the

---

[65]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 4-5, 3/29/00.

[66]*See e.g.*, St. Rec. Vol. 1 of 6, Minute Entry, 3/29/00 (attachment issued for Johnson for failure to appear for trial); Attachment, 3/29/00; *see also*, Minute Entry, 9/27/99; Minute Entry, 2/10/00.

court.[67]  Manson's counsel could not be held deficient in his performance for failing to secure the presence of a missing co-defendant.

For the foregoing reasons, Manson has failed to establish that his counsel was deficient or prejudicial for not having Johnson present at trial.  The state courts' denial of relief on this claim is not contrary to, or an unreasonable application of, *Strickland*.  Manson is not entitled to relief on this claim.

## XIII.   <u>Recommendation</u>

It is therefore **RECOMMENDED** that Fredrick Manson's petition for issuance of Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ____24th____ day of _____April_____, 2007.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[67]St. Rec. Vol. 5 of 6, Trial Transcript (continued), pp. 124, 130, 3/30/00.